IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| THE LINKS AT WESTFORK, LP | § | CASE NO: 06-30519 |
| Debtor(s) | § | |
| | § | CHAPTER 11 |

## MEMORANDUM OPINION AND ORDER FOR SANCTIONS AND ENFORCEMENT OF CASH COLLATERAL ORDER

Based on the findings of fact and conclusions of law stated below, the Court holds that Robert Vilt, The Links at Westfork, LP and Suzan Taylor must be sanctioned and that the Court's cash collateral order must be enforced.

**Background**

The Links at Westfork, LP ("The Links") filed a chapter 11 petition on February 7, 2006. The Links is the owner of the The Links at Westfork Golf Course. The 18-hole course opened in the spring of 2004. The general partner of The Links is Westfork Golf Management, LLC, whose members are Suzan E. Taylor and Nathan M. "Mack" Brown. The limited partners are Suzan E. Taylor and Nathan M. "Mack" Brown. Until early February 2006, only Mr. Brown was involved in the operation of The Links.

On November 28, 2005, Mr. Tracy Suttles, as president of Orbit, executed an earnest money contract to acquire The Links at Westfork Golf Course. However, before Orbit could close on the sale of the golf course, Sterling Bank, the initial secured creditor, posted the course for foreclosure. On the night before the scheduled foreclosure, Mr. Robert Vilt was contacted by Mr. Suttles. Mr. Vilt had represented Mr. Suttles in various matters for approximately six years. Mr. Suttles wanted to prevent Sterling Bank from foreclosing on the golf course. Mr. Suttles

1

instructed Mr. Vilt to perform due diligence and form an opinion as to whether The Links should file bankruptcy.

After contacting various people on the night of February 6, 2006, Mr. Vilt formed the opinion that The Links should file for bankruptcy. Mr. Vilt proceeded to file the petition for chapter 11 bankruptcy on behalf of The Links. The petition was signed by Ms. Taylor. It was not signed by Mr. Brown. Additionally, Mr. Vilt did not initially disclose to the Court the fact that he was representing the Debtor and Mr. Suttles, the proposed purchaser of the estate's primary asset. This was not brought to the Court's attention until February 23, 2006.

## Conduct of the Parties

*Robert Vilt*

Mr. Vilt failed to conduct appropriate due diligence before filing chapter 11 bankruptcy for The Links. The Court concludes that such negligent action is a result of Mr. Vilt's violation of the Bankruptcy Code's provisions mandating that debtor's counsel be "disinterested." Federal Rule of Bankruptcy 9011 provides, in relevant part:

> a) **Signature**. Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.
>
> (b) **Representations to the court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) *a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--*
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

2

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

FED. BANKR. P. 9011 (emphasis added).

Federal Rule of Bankruptcy 9011 mirrors Federal Rule of Civil Procedure 11. It contains "only such modifications as are appropriate in bankruptcy matters." *In re Highgate Equities, Ltd.,* 279 F.3d 148, 151 (2d Cir. 2002); *See In re Sadkin*, 36 F.3d 473, 477 (5th Cir. 1994); *In re Case,* 937 F.2d 1014, 1022 (5th Cir. 1991). Consequently, courts often use Rule 11 jurisprudence to inform decisions made under Rule 9011. *In re Highgate,* 279 F.3d 148, 151 (2d Cir. 2002); *In re DeVille*, 361 F.3d 539, 552 (9th Cir. 2004).

The Fifth Circuit has developed factors to determine whether an attorney has made a reasonable inquiry into the facts before filing a document with the court. These factors are:

1. the time available to the signer for investigation;

2. the extent of the attorney's reliance upon his client for the factual support for the document;

3. the feasibility of pre-filing investigation;

4. whether the signing attorney accepted the case from another member of the bar or forwarding attorney;

5. the complexity of the factual and legal issues; and

6. the extent to which development of the factual circumstance underlying the claim requires discovery.

*Childs v. State Farm Mut. Auto Ins. Co.,* 29 F.3d 1018, 1026 (5th Cir. 1994)(citing *Thomas v. Capital Sec. Services, Inc.,* 836 F.2d 866, 875 (5th Cir. 1988)).  Other circuits also look to these factors.  *In re Jazz Photo Corp.*, 312 B.R. 524, 536 (Bankr. N.J. 2004); *In re Szabo Contracting, Inc.*, 283 B.R. 242, 258 (Bankr. N.D. Ill. 2002).

In this case, the time for investigation was very short, because Mr. Suttles' goal was to prevent foreclosure of the golf course (see disinterestedness discussion below).  It was 10 p.m. on Monday, February 6, 2006, when Mr. Vilt commenced his "due diligence" on behalf of Orbit.  Mr. Vilt spoke with David Hannah, attorney for Mr. Suttles in the acquisition of The Links.  Mr. Vilt then spoke with Mr. Hamen, the real estate broker in the acquisition of The Links.  Finally, around 11:00 p.m., Mr. Vilt spoke with Ms. Taylor, a non-managing member of Westfork Golf Management, LLC (general partner of The Links).  At that time, Ms. Taylor was not even living in Texas.

The financial situation of a company should be the paramount consideration underlying the decision to enter bankruptcy.  However, Mr. Vilt did not review any financial documents of The Links.  Instead, Mr. Vilt completely relied on the factual information provided by Ms. Taylor.  Mr. Vilt never asked how long it had been since Ms. Taylor was involved in the affairs of The Links.  Neither did Mr. Vilt bother to check the governance documents of the company that he was about to place into bankruptcy.  Mr. Vilt did not review the Texas Secretary of State's documents to learn the identity of the putative debtor's managers.  Such documents are available twenty four hours a day on standard legal search engines such as Westlaw and Lexis.  Had those documents been reviewed, Mr. Vilt would have learned that Mr. Brown and Ms. Taylor were both principals of the putative debtor.

Courts have traditionally looked to state law to determine who may file a voluntary petition for bankruptcy. *In re Phillips,* 966 F.2d 926, 934 (5th Cir. 1992). Since Congress has not directed courts to do otherwise, the Fifth Circuit has declared that it "will continue to look to state law to determine which people have authority to seek federal bankruptcy protection on behalf of state-created business entities." *Id.*

Texas partnership law is clear that when a limited partnership takes an action outside the scope of the ordinary course of business, the consent of all partners is necessary:

> A difference arising as to a matter in the ordinary course of the business of a partnership may be decided by a majority-in-interest of the partners. An act outside the ordinary course of business of a partnership may be undertaken only with the consent of all partners.

TEX. REV. CIV. STAT. ANN. art. 6132b-4.01(h)(2006).

The Links has only one general partner and it is Westfork Golf Management, LLC. Its two members are Ms. Taylor and Mr. Brown. The LLC, acting as a general partner, can only act in accordance with its own governance documents. Those documents require that both members consent to the bankruptcy of The Links. (Testimony of Mr. Vilt, March 26, 2005). However, Mr. Brown did not sign the original chapter 11 petition, because Mr. Vilt's negligent due diligence did not reveal that he was a principal.

Mr. Vilt's limited and negligent due diligence is precisely the type of transgression that the rules regarding disinterestedness are meant to prevent. Section 1107 of the Bankruptcy Code gives a debtor-in-possession "all the rights … and powers … of a trustee serving in a case under this chapter." 11 U.S.C. § 1107. Section 327 gives a trustee, and thus a debtor-in-possession, the right to employ professional persons, such as attorneys, to represent or assist the debtor-in-possession. Section 327 also requires that the professional persons employed "do not hold or

represent an interest adverse to the estate, and … are disinterested persons….." 11 U.S.C.§327(a). A "disinterested person" is defined by§101(14) as one who,

>   (A) is not a creditor, an equity security holder, or an insider;
>
>   (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
>   …
>
>   (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason;

11 U.S.C.§101(14).

The Fifth Circuit has construed this definition to disqualify any professional "who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code." *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir. 1986). The high standards of the Code "serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities…." *In re C & C Demo, Inc.*, 273 B.R. 502, 506 (Bankr. E.D. Tex. 2001)(quoting *Rome v. Braunstein,* 19 F.3d 54, 58 (1st Cir. 1994)).

In this case, Mr. Vilt represented Mr. Suttles, the proposed buyer of the estate's principal asset. He also represented the debtor in the case, The Links. In fact, Mr. Vilt initially contacted The Links at the behest of Mr. Suttles, and recommended bankruptcy. Mr. Vilt was instructed by Mr. Suttles to "make a professional opinion whether or not a bankruptcy would be appropriate on behalf of that entity [The Links], and if in fact it were, to proceed with the appropriate steps to get that accomplished." (Testimony of Robert Vilt, May 26, 2006). It is difficult to believe that Mr. Vilt's advice was not tainted by the fact that his long term client, Mr. Suttles, wanted The

Links in bankruptcy. Mr. Suttles wanted to forestall foreclosure so that he could buy the golf course.

Mr. Vilt's lack of disinterestedness was not based solely on his long-term relationship with Mr. Suttles. Mr. Suttles actually paid Mr. Vilt to represent the putative debtor. Indeed, Mr. Suttles is the only person who has paid Mr. Vilt for his work in this case. Mr. Suttles' prevailing interest was to purchase the golf course, presumably at the lowest price possible. However, Mr. Vilt represented the debtor-in-possession, whose interest may or may not have been to sell. And if a debtor-in-possession were to sell, its interests, as a fiduciary to creditors, would call for the highest price possible. *Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 355 (1986).

Had Mr. Vilt been disinterested, this bankruptcy case would not have been filed. A disinterested attorney would not have filed a chapter 11 bankruptcy case on the limited information available to Mr. Vilt. Had he conducted even a modest investigation, he would have learned that (i) the petition was not authorized in accordance with the The Links' governance documents; (ii) the business person in control of the The Links was unaware of the bankruptcy filing; (iii) Ms. Taylor was not in control of the The Links' business affairs; (iv) the circumstances surrounding the filing closely resembled the "bad faith" factors described in *In re Little Creek*, 779 F.2d 1068, 1072 (5th Cir. 1986).

In *Little Creek*, the Fifth Circuit stated that whether a petition is filed in good faith is dependent upon "the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Little Creek* at 1072. The court pointed out several recurring factors that tend to exist in a bad faith filing. These include situations where

> [t]he debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no

> employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court…. Bankruptcy offers the only possibility of forestalling loss of the property.

*In re Little Creek*, 779 F.2d 1068, 1072 (5th Cir. 1986).

Not every factor mentioned in *Little Creek* is present in this case. However, not all factors need to be present to find bad faith. *Little Creek* at 1072. Enough *Little Creek* factors are present to warrant further investigation by an attorney before filing bankruptcy. In this case, there is one major asset, the golf course. The secured creditor's lien encumbers this asset. There are few, if any, unsecured creditors. Finally, the golf course was posted for foreclosure and The Links was unable to forestall the foreclosure via state law. Bankruptcy was the only possibility of preventing foreclosure. The *Little Creek* factors, taken in conjunction with the circumstances stated above, make it clear that Mr. Vilt was not disinterested, his advice was tainted, and his due diligence was negligent.

*Suzan Taylor and The Links at Westfork, LP*

Ms. Taylor authorized bankruptcy of The Links with little or no forethought. She admits that she was not familiar with bankruptcy until she spoke to Mr. Vilt at 11:00 p.m. on the night before filing the petition. Ms. Taylor claims that she thought herself to be the managing partner of The Links. However, Ms. Taylor was living out of state and was unfamiliar with the daily operations of The Links. Ms. Taylor allowed bankruptcy to be filed without consulting Mr. Brown.

A debtor in a chapter 11 case has specific duties that must be performed. Ms. Taylor, as a principal of The Links, took responsibility for seeing that these duties were carried out.

8

Accordingly, the Court holds Ms. Taylor and The Links jointly and severally liable for failing to prosecute this case. Section 521 of the Bankruptcy Code requires that a business debtor file:

(A) a list of creditors; and

(B) unless the court orders otherwise--

(i) a schedule of assets and liabilities;

(ii) a schedule of current income and current expenditures; and

(iii) a statement of the debtor's financial affairs.

11 U.S.C. § 521(a). These lists and schedules are due either with the filing of the petition, or within 15 days thereafter. FED. R. BANKR. P. 1007. Furthermore, § 1116 provides, in relevant part:

> In a small business case, a trustee or the debtor in possession, in addition to the duties provided in this title and as otherwise required by law, shall—
>
> (1) append to the voluntary petition or, in an involuntary case, file not later than 7 days after the date of the order for relief—
>
> (A) its most recent balance sheet, statement of operations, cash-flow statement, and Federal income tax return; or
>
> (B) a statement made under penalty of perjury that no balance sheet, statement of operations, or cash-flow statement has been prepared and no Federal tax return has been filed;
>
> …
>
> (3) timely file all schedules and statements of financial affairs, unless the court, after notice and a hearing, grants an extension, which shall not extend such time period to a date later than 30 days after the date of the order for relief, absent extraordinary and compelling circumstances;

11 U.S.C. § 1116.

On February 23, 2006, sixteen days after filing for bankruptcy, The Links had not provided any of the information required by § 521(a) or 1116. The Court issued a Case

Management Order, requiring The Links to provide the requisite information within ten days. The Links violated that order and did not produce the required information.

Ms. Taylor claims that she made efforts to provide the appropriate information. She claims these efforts were stymied by employees of The Links. However, it is a debtor-in-possession's responsibility to control its employees. A debtor-in-possession bears a fiduciary obligation to creditors just like a trustee would. *Commodity Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 355 (1986). This obligation entails the proper prosecution of the bankruptcy case. In this case, such prosecution required production of schedules and financial statements. If Ms. Taylor, through The Links, was unable to control her employees, proper steps should have been taken to remove those employees. The Court does not accept poor management skills as sufficient excuse to violate the Bankruptcy Code.

Additionally, the Court does not understand why Ms. Taylor never bothered to call Mr. Brown for assistance in obtaining the necessary business records or managing the wayward employees. Mr. Brown was the partner in charge of operations. He had relationships with the employees, and knew where the business records were located. Indeed, much of Ms. Taylor's testimony focused on the fact that she was unable to locate The Links' business records. The "missing" records were at the accountant's office. Mr. Brown was aware of that fact from the beginning. Ms. Taylor never even contacted Mr. Brown to inquire about the location of the "missing" records.

**Appropriate Sanctions**

Fed. R. Bankr. P. 9011(c) gives this Court the power to sanction attorneys for violating Fed. R. Bankr. P. 9011(b)(1) and (b)(2). This Court also has inherent authority to regulate the practice of litigants and lawyers appearing before it. *Chambers v. NASCO, Inc.,* 501 U.S. 32

(1991).

In determining appropriate sanctions, the Court should limit the sanction to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. FED. R. BANKR. P. 9011(c). *In re Porcheddu,* 338 B.R. 729 (Bankr. S.D. Tex. 2006).

The Court has examined what sanctions have been imposed by other courts. Frequently the amount of sanctions is determined by examining opposing counsel's attorneys fees. In general, this Court rejects fee shifting as the only appropriate measure of sanctions. The fees incurred by others may or may not properly measure the amount that is appropriate to deter future wrongful conduct by a party. *Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir. 1991). When the sanctions are imposed on the Court's own motion, it may be inappropriate to examine the Court's own cost of operation as an appropriate measure. *Blue v. United States Dep't of Army*, 914 F.2d 525, 548 (4th Cir. 1990). Accordingly, the Court will examine the particulars of the conduct, the party, and the required deterrent in order to assess an appropriate sanction.

In *Chambers,* the Supreme Court affirmed the imposition of sanctions of $996,644, disbarment and suspension for bad faith conduct of a defense of a contract suit. *Chambers*, 501 U.S. at 55-58. In that case, the monetary award was based on a measure of opposing counsel's fees, but additional sanctions were added to assure proper deterrence. In other cases, sanctions have been limited to an admonishment of counsel. However, admonishments are generally limited to situations that are substantially less egregious than the conduct before this Court. *Traina v. U.S.*, 911 F.2d 1155, 1158 (5th Cir. 1990) (reprimand for reliance on inapplicable case law); *Miller v. Norfolk So. Ry. Co.*, 208 F. Supp. 2d 851, 854 (N.D. Ohio 2002) (reprimand for filing frivolous motion to reconsider which simply repeated earlier arguments); *Jenkins v.*

*Methodist Hosp. of Dallas, Inc.*, 2004 WL 2871006, at *2 (N.D. Tex. Dec. 14, 2004) (reprimand for failure to proofread brief and correct erroneous quotation upon discovery of error).

The Court finds that the actions of Mr. Vilt were in clear violation of §327. The Court also finds that Mr. Vilt's due diligence regarding The Links was so limited as to be negligent. This is a violation of Rule 9011. A determination of bad faith should focus on the totality of the circumstances. *In re Nassar,* 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998). Mr. Vilt's actions, in combination with the Debtor's and Ms. Taylor's blatant failure to prosecute this bankruptcy case, amounts to a bad faith filing.

Bankruptcy cases are a unique form of federal litigation. One of the most important events in a bankruptcy case is the filing of the petition. Unlike a civil complaint that requests relief after consideration by the Court, the filing of a bankruptcy petition results in two forms of automatic relief. First, the filing of the petition constitutes the entry of an order for relief. 11 U.S.C. §301. Second, the filing of the petition by an eligible entity invokes the automatic stay— a Congressionally imposed injunction. 11 U.S.C. §362(a).

If a bankruptcy petition is filed in bad faith, it nevertheless invokes the power of the Congressionally imposed automatic stay. Accordingly, the misuse of bankruptcy petitions is an extraordinarily serious issue. Indeed, when Rule 9011 of the Federal Rules of Bankruptcy Procedure was amended in 1997 to provide a "safe harbor" comparable to the safe harbor under Rule 11 of the Federal Rules of Civil Procedures, no safe harbor was granted for the filing of a bankruptcy petition in violation of the rules. FED. R. BANKR. P. 9011(C)(1)(A).

While the Links never properly provided its schedules and financial statement, the Court does have an operating budget provided by the Links. This budget was provided as an attachment to a cash collateral order. The Links has an operating budget of approximately

$482,000 a year. A bad faith filing on behalf of a business of this size is a serious offense. Nevertheless, there are mitigating factors. Since the time the Court learned of Mr. Vilt's absence of disinterestedness, he has been forthright and cooperative. The Court considers this in its determination of sanctions. Mr. Vilt was paid $4,000 by Mr. Suttles for his assistance in this matter. That sum is to be paid to the Clerk of Court. Mr. Vilt is to pay an additional $8,000 to the Clerk of Court. The Court believes that disgorgement of fees and a fine equal to twice the fees paid is sufficient to deter similar conduct by Mr. Vilt and others in the future. Thus, Mr. Vilt is to pay a total of $12,000 in sanctions to the Clerk of Court. This is to be paid within ten days of this order.

Ms. Taylor and The Links are also to be sanctioned. This case was prosecuted with gross disregard for the Federal Bankruptcy Code, the Federal Rules of Bankruptcy, the rights of The Links' creditors, and the time of this Court. Such mismanagement amounts to bad faith. The Court considers Ms. Taylor's actions to be equally egregious to those of Mr. Vilt. Her irresponsible authorization to file the case, her conduct once the case was filed, and the size of the business are all factors considered in determining the amount of sanctions. Accordingly, Ms. Taylor and The Links are sanctioned jointly and severally for the sum of $12,000. This sum is to be paid to the Clerk of Court within ten days of this order.

Finally, this Court approved a Stipulation and Agreed Order Authorizing Use of Cash Collateral (docket no. 24) on February 23, 2006. That order required, among other things, The Links to make monthly payments to Brown Bark I, L.P., equal to $16,691.95 plus any monthly net cash flow. These payments were scheduled to be made on the last day of each month beginning February 28, 2006. The order was not complied with; no payments have been made. The Court now orders that the payment terms of the agreed order be fulfilled. The Links will

satisfy the terms of the agreed order for the period beginning on February 28, 2006, and ending on April 14, 2006, the date this case was dismissed.

Signed at Houston, Texas, on June 12, 2006.

_____
MARVIN ISGUR
United States Bankruptcy Judge